and violent incidents at the hands of Native Fijians. That was the BIA overturned the IJ's adverse credibility determination, correct? Yes. So for the purposes of this hearing, we assume the petitioner's testimony to be accurate. Yes, Your Honor. Credible. That's correct. And if you take his testimony as credible, the cumulative effect of the incidents involving petitioner, his wife, his son, and after they left Fiji, his brother and other relatives, the cumulative effect of those incidents evidence a pattern and practice of invidious discrimination harassment that has been decades old. That is indicative, rather, of decades old racial strife between Native. Was a pattern or practice argument raised to the BIA? I don't believe that the board addressed it specifically. Well, that's not the question. Was it raised to them? I believe it was, Your Honor. In our brief, I believe we did indicate that there was a pattern and practice of discrimination and harassment in both the main brief and the brief addressing the motion to reopen. The board in the main appeal seems to have summarily dismissed petitioner's claim for asylum by citing that the problems in Fiji between the Natives and the Indo-Fijians were just indicative of general unrest and that there was no record evidence that the government was either unable or unwilling to assist the petitioners in investigating and pursuing the perpetrators of these incidents. We submit that the board had erred in that respect, that there were sufficient evidence, there was sufficient evidence, rather, that there was violence committed against the petitioner's family. And I believe Exhibit 12 was an attachment of the police report. And if the court's attention is directed to Exhibit 12 specifically in the report, it does say that the police considered the 1996 incident involving petitioner as minor, quote, minor and civil in nature, and no thorough investigation was done. We submit that the record evidence shows that the government may not have been unwilling necessarily to investigate and prosecute, but they were unable to. And I believe the standard is if the government is either unable or unwilling to prosecute perpetrators in this regard, that that should be sufficient record evidence to establish asylum. Kennedy. I suppose you come to the question of if a random crime occurs and it's reported to the police and the police are unable to find the people who did it, which happens all the time in every country, is that good enough? Or do we just look to see whether the police made an effort, even if they were unable to control it? Well, even in this case, Your Honor, I believe that the effort was half-hearted if at all made. What's the evidence that they were either unwilling or half-hearted? Well, I believe after most of the incidents claimed by Petitioner in his testimony, they did report the matter to the police. And the perpetrators were never questioned. In fact, I believe one of the incidents, the perpetrators were identified by the female respondent. That's the incident with her son, I think. And with the son also. And the police didn't follow up on it. No reason was given to Petitioner why a follow-up investigation was not made. We submit that that by itself is indicative that the government is either unable or unwilling to assist and lends credence, if you will, to the fact that Petitioner is entitled to asylum. With respect to the motion to reopen, if I may, we believe that the Board erred in not considering Petitioner's affidavit accompanying the motion, attesting to the fact that Petitioner's family and his wife's family in Fiji had suffered in the aftermath of the December 2006 coup. The Board did not even mention the affidavit in their decision denying the motion to reopen. In our brief, we submit that either the Board overlooked the affidavit or they considered it but did not consider that the evidence was credible, the affidavit was credible, or that it was credible and not material, or it was material but it was not a sufficient prima facie showing. Should we send it back, then? We would submit that it would have to go back to the Board for consideration. On that point. Yes. What is your burden with respect to showing some kind of targeting of your client or your client's family as opposed to general unrest and dissension and bias, discrimination? Individually, Your Honor, or individually as a group? Individually. Individually. I believe that if you take the cumulative effect or, excuse me, if you take as cumulative evidence his testimony, Petitioner's testimony at the main hearing, and his affidavit in the motion to reopen, if you consider all that together, you certainly have individualized persecution here. Well, suppose we leave aside the affidavit. For the motion to reopen? I believe that it's improper to just consider country conditions articles, which the Board seems to have done in this particular case in the motion to reopen. There was a letter from the sister, wasn't there? There was. There was a letter from the sister, and I believe the motion to reopen. Is that part of the IJ record? No. I believe it's either part of the IJ record, Your Honor, or part of the motion to reopen. I can't recall offhand. I apologize. But it's not just the affidavit per se with respect to the motion to reopen, but also the affidavit of the sister, and I believe also the brother, in either the main hearing or the motion to reopen, that he lends credence to the fact that Indo-Fujians are, in fact, still being discriminated against. Well, the sister I don't think was an affidavit, was it? Or a letter. A letter? I'm sorry. It was a letter, yes. But it's uncontroverted. It's not disputed. And for purposes of the motion to reopen, affidavits and non-affidavits, if you will, should be taken as credible unless they're inherently unreliable. So if you take the cumulative effect of that evidence, it would have seen that the Board had erred in denying the motion to reopen and should send it back to or this Court, rather. At least consider that evidence. All right. If there are no further questions, if I can reserve the call. You may reserve the call. Thank you. Thank you. May it please the Court. My name is Claire Workman and I represent the Attorney General of the United States who is the respondent in this case. This Court should deny these consolidated petitions for review. First, the record fails to compel reversal of the Board's findings that Mr. Singh and his family did not experience incidents that rose to the level of persecution, however deplorable those events may have been. It was not persecution on account of a statutorily protected ground by the Fijian government or a group that the government was unable or unwilling to control. How many coup d'etats have there been in Fiji in the last 15 years? I believe there have been three major ones, Your Honor. One in 1987, one in 2000, and one most recently in December of 2006. There has also been described in the record as there could be two that occurred in 87. And the general posture of those is that the native Fijians, alarmed at the political power of the Labor Party who are Indo-Fijians, brought centuries ago as were slaves to North America for labor, have now lived there, multiplied, and they enjoy political power. And when they win an election, the natives, with a show of armed force, they control the military and the police, throw them out, right? That's what's happened in every one of them, right? Well, Your Honor, most recently in the 2006 coup, the military leader who led that coup expressed sympathy for Indo-Fijians and the fact that the Constitution favors the native Fijians and wants to review that Constitution. Do you dispute the fact that there has been a long history of racial tension between Indo-Fijians and native Fijians? No, Your Honor. And what happened to the petitioner and his family here, which we must accept is true given the BIA's reversal of the IJ's adverse credibility determination, established that his family was harassed by these folks based on their claim to ownership or lessee status of the land they were occupying and the desire of the native Fijians to toss them off. Yes, Your Honor. For an asylum claim, though, there are three major components that the petitioner must show. One is, of course, severe mistreatment that rises to the level of persecution. Two, that it is on account of a statutorily protected ground. And three, that the government is either unable or unwilling to control the non-government actors as was the case here. Did Singh testify that the latter two incidents involving his family were reported to the police? Yes, Your Honor. And that the police did not investigate? No, Your Honor. Actually, he testified that with respect to his wife's incident, the police did say they were going to investigate. And also with respect to his son's incident, the police said they would investigate it, said they were going to investigate, and he followed up with them. They were still investigating. These latter two incidents happened in 1998, shortly before Mr. Singh left for the United States. So it's unclear what the outcomes of those investigations were. I think it's very important to keep in mind that the most significant incident that occurred to this family was, of course, the murder of Mr. Singh's father that occurred around the time of the 1987 coup. And that the police apprehended the murderer within a couple of hours, and he was tried and convicted after native Fijians identified him as the murderer. And so that, of course, is a horrible incident, but it did occur during a time of political upheaval in Fiji. That was in 87. And then, of course, the family, nothing happened to this family for eight years following that incident. How old was he then? How old was Mr. Singh in 1987? He was... 21 years old, Your Honor. And... Did he report the 96 beating to the police? The 96 beating, his brother reported it, and the police did file a report. Now, he says... I thought that the record at 5-42-43, he said he reported it. Well, Your Honor, the record is a little confusing because there are different parts of it that indicate... I do remember that his brother reported it. And didn't he testify the police never followed up, never conducted an investigation? Well, that is unclear from the record, Your Honor, because the petitioners say that in both of their briefs to this court, but there is nothing in the record that supports, that actually says that the police did not investigate it. So it's unclear where they get the support for that. I also would just like to correct something that my opposing counsel said in response to Judge Kennedy's question about the pattern and practice claim being exhausted to the board. It was not exhausted to the board. It was mentioned, as he said, in both of the briefs to this court, but because it was not exhausted to the board, this court does not have jurisdiction to consider the pattern and practice claim. So the only way for... that he could have established a well-founded fear of future persecution was to show that he would be singled out. Yeah. Isn't that part and parcel of Nexus? Um, no... Nexus was clearly before the BIA. It is clearly before us, correct? Yes, Your Honor. And isn't the history of the treatment of endophagians in Fiji part and parcel of the Nexus claim? I would have to disagree, Your Honor, and because they're separate parts of the asylum components. Of course, Nexus is the second component that a petitioner must show to meet an asylum claim, but that is separate from... that's in terms of showing past persecution, but in terms of showing a well-founded fear of future persecution, he has to show that he would be singled out if he does not get the presumption of future persecution that arises when he has established past persecution, which he did not in this case. And the BIA did not find persecution. That's correct, Your Honor. Yes. And it's clear that these incidents don't rise to the level of persecution because as... as terrible as they are, they seem to be either during a time of... of intense ethnic strife in Fiji and also a lot of them are motivated by theft. He was robbed both in the 1995 incident in particular that he made clear that it had nothing to do with land. It was just that he was driving a taxi, which is a very dangerous job, and that the passengers robbed him. And he did report this to the police, and the police report, although it's misstated in the petitioner's first brief to this court, the police did interview local criminals and just that they had no leads to go on, and this court... In connection with which incident is this now? Oh, that's the 1995 incident, Your Honor. And this court has said before that the lack of leads, that does not indicate that the police is... that the police are unable or unwilling, just that they are unable to solve the crime after having attempted to investigate it as occurs in many countries across the... in the world. If the petitioner shows that there's widespread hostility against Indo-Fijians with considerable violence against them, does he have to show that there's some reason why that violence will be aimed at him? Oh, Your Honor, I see that my time is almost up. Would you please answer? Okay. He does have to show that the... He has to show that he would be singled out, Your Honor. See, the reason... I guess I understand that, but it's the randomness of that kind of thing that's part of its terror. And if it is random, of course, then he's never gonna be able to show you. He's just saying, you know, the odds are really against me if I go back to Fiji. I understand your concern, Your Honor. I think it's important here that there's no evidence in the record, particularly submitted with the motion to reopen, that there's any continuing interest in Mr. Singh, particularly because there... there are no further issues with the land. Other than the fact that he's Indo-Fijian. Yes, Your Honor. And that the incidents that are described in the affidavit submitted with the motion to reopen, those, of course, do not rise to the level of persecution, and they don't show that this family is particularly targeted for any reason, let alone one of the statutorily protected grounds. Didn't the brother's letter say they were still looking for him? Uh... I'm looking at the brother's letter. It says they are still looking for you. Yes, Your Honor. And didn't the sister's letter say that they're still after him and after the family and there's no sense in reporting these things to the police? I believe so, Your Honor. But those letters are... those were part of the original record before the immigration judge. I don't know offhand, Your Honor, what year they were from. I believe maybe right around the time of his hearing, 2001, 2000-something. But with the motion to reopen that was submitted much later, after the 2006 coup, there's nothing that indicates that this particular family has been targeted. Did the I.J. say anything with respect to those letters? I don't believe in the decision, no, Your Honor. But it's clear he did say that he had considered all of the evidence in the record. And, of course, this Court presumes anyway that the... And he made an adverse credibility finding. Yes, he did, Your Honor. But the board, of course, reversed that. Without mentioning these letters or...? No, I don't believe the letters were specifically mentioned. Okay, thank you. Thank you. Just briefly, if I may, Your Honors. Excuse me. My understanding of the record is that with respect to the 1996 incident, the brother had reported the incident involving the petitioner to the police. Secondly, counsel references these incidents involving petitioner's family as robbery, common criminal robbery, if you will, that is prevalent in Fiji. We would submit that these robbery and attacks on Indo-Fijians are the modus operandi, if you will, of the natives, with the direct intention of harassing and intimidating Indo-Fijians to get them to leave, to leave Fiji. Also, with respect to the motion to reopen, although civil unrest by itself doesn't necessarily establish asylum eligibility, the existence of civil strife doesn't necessarily preclude it either. And if you take into effect that the... take into consideration, rather, that the climate after the December 2006 coup still shows that conditions are unstable in Fiji, still shows that there are human rights abuses, still shows that there's a level of censorship in the country, and there's a deepening racial strife. There is no lessening of racial strife in Fiji. And we believe that is the key component of the aftermath of the December 2006 coup that warrants at least a remand to the board for further consideration of petitioner's situation. Thank you. Thank you. The matter just argued is submitted for decision.
judges: Schroeder, Canby, Hawkins